# UNITED STATES DISTRICT COURT

District of New Jersey

| | |
|---|---|
| Chambers of<br>**William H. Walls**<br>District Judge<br>_____<br><br>(973) 645-2564<br>(973) 645-3436 Fax | Martin Luther King Jr.<br>Federal Courthouse<br>50 Walnut Street<br>Newark, New Jersey 07102 |

<u>NOT FOR PUBLICATION</u>

<u>LETTER ORDER</u>

<u>ORIGINAL ON FILE WITH CLERK OF COURT</u>

June 19, 2006

**Appearances:**

Ryan F. Stephan, Esq.
Erik H. Langeland, Esq.
Touhy & Touhy, Ltd.
161 N. Clark St.
Suite 2210
Chicago, IL 60601

Jonathan I. Nirenberg, Esq.
Resnick Nirenberg & Siegler PC
101 Eisenhower Pkwy., Suite 300
Roseland, NJ 07068
    Attorneys for Plaintiffs

Amy L. Ventry, Esq.
Randy S. Gidseg, Esq.
Nixon Peabody LLP
990 Stewart Ave.
Garden City, NY 11530-4838
    Attorneys for Defendants

Re:   <u>Chemi, et al. v. Champion Mortgage, et al.</u>, 05-cv-1238 (WHW)
     Plaintiffs' Motion for Conditional Class Certification Pursuant to Section 216(b) of the
     Fair Labor Standards Act and Defendants' Cross-Motion to Strike Opt-in Forms

Dear Litigants:

Plaintiffs move to preliminarily certify this case as a putative class action pursuant to the Fair Labor Standards Act of 1938, 29 U.S.C. § 216(b) ("FLSA"), seek the Court's facilitation under the FLSA to provide notice of this suit to potential class members, and request an equitable tolling of the statute of limitations. In a cross-motion, defendants ask the Court to strike consents to opt-in that were allegedly improperly obtained. The Court heard oral argument on the motions on June 12, 2006. Plaintiffs' motion to preliminarily certify the class and provide notice to potential class members is denied, plaintiffs' motion to stay the statute of limitations is denied as moot and defendants' motion to strike consents to opt-in is granted.

### FACTS & PROCEDURAL BACKGROUND

Plaintiff Christopher Chemi originally brought this complaint on March 1, 2005 pursuant to the FLSA, as a nationwide collective action to recover unpaid overtime compensation and related expenses allegedly owed to plaintiff and all other loan officer employees of defendants Champion Mortgage ("Champion"), Keybank National Association ("Keybank") and Keycorp. Soon after plaintiff filed the complaint, he filed this motion seeking certification of this matter as a collective class action. Shortly after filing the motion to certify, plaintiff amended his complaint to add plaintiffs Brian Gagliardi, Shpetim Hani, Mary Intile and Nicole Makroulakis. Recently, plaintiffs received permission from the Court to amend their complaint yet a second time. The second amended complaint dropped Ms. Makroulakis as a named plaintiff and added a count pursuant to New Jersey's Wage and Hour Law. Plaintiffs seeks to bring the New Jersey

claim as a class action pursuant to Fed.R.Civ.P. 23(b)(3).[1]  All of the named plaintiffs are former loan officers employed by defendant Champion in its New Jersey offices.  In sum, the Second Amended Complaint alleges that "Plaintiffs and the similarly situated employees routinely worked in excess of forty hours per week without overtime compensation," (Second Am. Compl. ¶ 15) and "defendants failed to pay overtime wages and other benefits to Plaintiffs and other similarly situated loan officers during their employment by intentionally, willfully and improperly designating the position of loan officer as exempt from federal law . . . ." (Second Am. Compl. ¶ 18.)

In response to plaintiffs' motion to certify the class and provide notice, defendants cross-moved to strike all op-in forms as a result of improperly distributed notice.  Defendants contend that a majority of the consents to opt-in were obtained while counsel for plaintiff maintained a website that provided notice and information regarding this case, and that this solicitation of consents to opt-in is contrary to established case law.

In general, motions to preliminary certify a class under the FLSA are typically decided by the court very early in the litigation.  However, since the filing of this motion, a significant amount of time has elapsed.  The parties have engaged in discovery including the production of documents, depositions of two named plaintiffs and depositions of two witnesses for defendants, and approximately 79 parties have filed opt-in consent forms with the court.  See 29 U.S.C. § 216(b) (requiring all similarly situated parties who wish to participate in an FLSA case to "opt-in" to the case by filing a written consent to join the lawsuit).

---

[1] The Court notes for purposes of this motion that it is not deciding certification of a class action for violations of New Jersey law under Rule 23.  The Court limits its discussion to the issue of conditional class certification pursuant to FLSA Section 216(b).

Finally, in advance of oral argument and given the extended elapsed period from the filing of the motion, the Court requested the parties to provide supplemental briefing on the current status of discovery, the impact of that discovery on the pending motion and discussion of recent case law impacting a determination of plaintiffs' motion.

## DISCUSSION

I.      *Motion to Conditionally Certify a Class Pursuant to 216(b)*

Court's have long grappled with the scope and application of the putative class action device available to plaintiffs in FLSA § 216(b).  Section 216(b) provides that a plaintiff may bring an action for violation of the FLSA and it,

> may be maintained against any employer . . . in any Federal or State court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated. No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.

29 U.S.C. § 216(b).  The undefined "similarly situated" standard set out in the statute has long provoked consternation and confusion among courts attempting to adhere to Section 216(b)'s edicts and many commentators have noted the statute's conflict with Fed.R.Civ.P. 23 requirements for class certification.  Generally, courts have universally recognized that the similarly situated standard is much more lenient than the standard required under Rule 23.  See generally Sperling v. Hoffman-La Roche, Inc., 118 F.R.D. 392  (D.N.J. 1988), *aff'd in part and appeal dismissed in part*, 862 F.2d 439 (3d Cir.1988), *aff'd and remanded*, Hoffman-La Roche, Inc. v. Sperling, 493 U.S. 165 (1989).

In the seminal case to address the application and scope of Section 216(b), the Supreme Court–while not addressing the contours of the similarly situated standard for purposes of certification–held that district courts have discretion in appropriate cases to implement Section 216(b).  Hoffmann-La Roche, Inc. v. Sperling, 493, U.S. 165, 169 (1989).   The Sperling court noted that "Section 216(b)'s affirmative permission for employees to proceed on behalf of those similarly situated must grant the court the requisite procedural authority to manage the process of joining multiple parties in a manner that is orderly, sensible, and not otherwise contrary to statutory commands or the provisions of the Federal Rules of Civil Procedure."  Id. at 170.

Under Sperling, this Court undoubtedly has the authority to issue notice to a potential class of loan officers in this case.  However, the Court's application of the notice authority may be exercised with discretion and only in appropriate cases.  See Haynes v. Singer Co., 696 F.2d 884, 886 (11th Cir. 1983).  The threshold issue in determining whether it is appropriate to authorize class notice in an FLSA action is whether the class members are "similarly situated." See 29 U.S.C. § 216(b); Moeck v. Gray Supply Corp., 2006 WL 42368, at*4 (D.N.J. Jan. 6, 2006) (Bassler, J.).

Unfortunately, the Supreme Court and the Third Circuit have provided no guidance on who may be considered "similarly situated" for purposes of Section 216(b) of the FLSA.  In this circuit, district courts have developed a two step approach in order to make this determination, an approach that is universally recognized by other circuits and sister district courts.  See Armstrong v. Weichert Realtors, 2006 WL 1455781, at 1 (D.N.J. May 19, 2006) (Greenaway, J.); Moeck, 2006 WL 42368, at 4; Morisky v. Public Serv. Elec. & Gas Co., 11 F. Supp. 2d 493, 497 (D.N.J. 2000); Goldman v. Radio Shack Corp., 2003 U.S. Dist. LEXIS 7611, at *20 (E.D. Pa. Apr. 17,

2001); see also Thiessen v. Gen. Elec. Capital Corp., 996 F. Supp. 1071, 1080 (D. Kan. 1998) (collecting cases). Initially, the district court must make a determination at the "notice stage," the point where the court must assess whether to provide notice to the potential class members, of whether class members are similarly situated.[2] Because the court usually has only minimal evidence before it at this initial step–generally only the pleadings and any affidavits submitted by the parties–"this determination is made using a fairly lenient standard, and typically results in 'conditional certification' of a representative class." Thiessen, 996 F. Supp. at 1080 (quoting Brooks v. Bellsouth Telecomm., Inc., 164 F.R.D. 561, 568 (N.D. Ala.1995)). Many courts have developed a very general standard that requires "nothing more than substantial allegations that the putative class members were together the victims of a single decision, policy, or plan infected by discrimination." Id.; see also Sperling v. Hoffman-La Roche, Inc., 118 F.R.D. at 407.

Other courts in addressing this first step analysis have required a more stringent–although nonetheless lenient–test that plaintiff make a "modest factual showing that the similarly situated requirement is satisfied." See Smith v. Sovereign Bancorp, Inc., 2003 WL 22701017, at *2 (E.D. Pa. Nov. 13, 2003); see also Dybach v. Estate of Florida Dep't of Corr., 942 F.2d 1562, 1567-68 (11th Cir. 1991) ("Before determining to exercise [its] power [to approve notice to potential plaintiffs], the district court should satisfy itself that there are other employees . . . who desire to

---

[2] The determination of conditional certification at the notice stage "does not suggest that plaintiffs' claims against defendant are meritorious." Hoffmann v. Sbarro, Inc., 982 F. Supp. 249, 262 (S.D.N.Y. 1997). In line with this proposition is that the Court need not, and should not, evaluate the merits of plaintiffs claim in order to determine the contours of similarly situated plaintiffs. Id. Defendants spend a portion of their opposition challenging the merits of plaintiff's claims. Those arguments will not be considered by the Court in making its determination of whether an identifiable class of similarly situated plaintiffs exists for purposes of providing notice at this initial stage.

'opt-in' and who are 'similarly situated'. . . ."); Mueller v. CBS, Inc., 201 F.R.D. 425, 428 (W.D. Pa. 2001) (requiring plaintiff to provide "a sufficient factual basis on which a reasonable inference could be made" that potential plaintiffs are similarly situated (internal quotations omitted)); Harper v. Lovett's Buffet, Inc., 185 F.R.D. 358, 362 (M.D. Ala. 1999) ("Plaintiffs have the burden of demonstrating that a reasonable basis for crediting their assertions that aggrieved individuals exist in the broad class that they propose."); Jackson v. New York, 163 F.R.D. 429, 431 (S.D.N.Y. 1995) ("[P]laintiffs need merely provide some factual basis from which the court can determine if similarly situated potential plaintiffs exist." (internal quotations omitted)); Briggs v. United States, 54 Fed. Cl. 205, 207 (2002) (requiring "modest factual showing that [plaintiffs] are . . . similarly-situated with other, un-named potential plaintiffs"). As one Court has described this test, plaintiff must demonstrate a "factual nexus between plaintiffs' situation and the situation of other current and former . . . employees." Realite v. Ark Rests. Corp., 7 F. Supp. 2d 303, 308 (S.D.N.Y. 1998).

  Even if the district court grants conditional certification at the "notice stage," courts have long recognized the authority of the district court to readdress that determination in the second step of the approach. In the next step, the court "makes a second determination after discovery is largely complete and the case is ready for trial." Thiessen, 996 F.Supp. at 1080. In its analysis of the "similarly situated" question at this stage, the court has much more information on which to base its decision and, as a result, now employs a stricter standard. Id. If the court finds the plaintiffs are similarly situated, the case is allowed to proceed to trial as a collective action.

  The parties here do not dispute that they seek certification at the "notice stage." Therefore, under this first step analysis, the court must address whether the pleadings and

supporting affidavits provide some demonstration of the existence of a similarly situated class of employees.[3]  While this first step typically results in conditional certification, the Court notes that plaintiffs retain the burden of providing either (1) a modest factual showing, beyond bald assertions in its complaint, that a class of employees exists who are similarly situated to named plaintiffs with respect to job requirements and pay provisions, Dybach, 942 F.2d at 1567-68, or (2) that employees were victims of a common policy of plan that violated the FLSA. Sperling, 118 F.R.D. at 407.

      Turning first to the question of whether plaintiffs have alleged that potential plaintiffs are similarly situated by virtue of their being victims of a common plan or policy, the Court is not convinced that plaintiffs have met this very limited burden.  The plan or scheme as alleged by plaintiffs is that defendants improperly categorized them as exempt under the FLSA.  What plaintiffs really mean here is that they are challenging the designation of loan officers as non-exempt under the FLSA, the basis of its lawsuit.  Logically, such an action on the part of defendants cannot be classified as a common policy or plan, otherwise every case brought before the courts alleging improper designation as non-exempt employees would automatically qualify for conditional class certification. See Sovereign Bancorp, 2003 WL 22701017, at *2 ("automatic preliminary class certification is at odds with the Supreme Court's recommendation to 'ascertain the contours of the [ § 216] action at the outset,' and such certification does not comport with the congressional intent behind FLSA's opt-in requirement, which was designed to

---

[3] The Court notes that regardless of which standard is applied in the "notice stage" certification analysis that has developed amongst Third Circuit district courts, plaintiff has failed to allege or present any evidence under either standard sufficient to demonstrate the similarity of potential plaintiffs to the named plaintiffs.

limit the potentially enormous size of FLSA representative actions" (internal citations omitted)). The courts must require more factual allegations that demonstrate a particular plan or policy initiated by defendants that violates FLSA, rather than accepting a general claim of improper exemption under the statute in order to satisfy this particular test.  See, e.g., Mike v. Safeco Co., 274 F. Supp. 2d 216, 221 (D. Conn. 2003) (rejecting plaintiff's argument that defendant's characterization of employees as exempt under the FLSA sufficiently establishes that these employees are similarly situated for purposes of conditional certification); Dean v. Priceline.com, Inc., 2001 U.S. Dist. LEXIS 24982, at *5 (D. Conn. June 5, 2001) (same); Sheffield v. Onus Corp., 211 F.R.D. 411, 413 (D. Or. 2002) (same).  Plaintiff's have offered no additional evidence suggesting the existence of such a policy or plan.

   Moreover, any determination of whether an employee is properly exempted under the FLSA involves a fact-intensive inquiry into each putative class members employment circumstances.  While this Court is currently not in the position to judge the merits of such a designation, even at the notice stage, the Court may not blithely assume, as suggested by plaintiffs, that satisfying the similarly situated standard can be accomplished by alleging in a conclusory fashion that all loan officers throughout the country were subject to the same "'policy' of an allegedly improper exemption." O'Donnell v. Robert Half International, Inc., 2006 WL 864373, at *3 (D. Mass. Mar. 20, 2006).  Plaintiff must demonstrate more facts than this to establish a common policy.  This they have failed to do.

   As for evidence that plaintiffs are similarly situated with respect to job requirements and pay provisions, plaintiffs have failed to make any initial showing in either their opening brief or their reply, that supports a determination that putative class members are similarly situated as to

job requirements or pay provisions. Indeed, in their initial brief, plaintiffs failed to submit a single affidavit in support of its motion, instead relying entirely on the pleadings and conclusory allegations in its brief. Numerous courts have found such allegations insufficient to satisfy the burden of demonstrating the similarly situated standard. See Aguirre v. SBC Commc'ns, Inc., 2006 WL 964554, at *6 (S.D. Tex. Apr. 11, 2006) ("plaintiffs' conclusory and unsupported allegations are inadequate even for first-stage certification and notice"); Rodgers v. CVS Pharmacy, Inc., WL 752831, at *3, 5 (M.D. Fla. Mar. 22, 2006) ("A plaintiff's or counsel's belief in the existence of other employees who desire to opt in and 'unsupported expectations that additional plaintiffs will subsequently come forward are insufficient to justify' certification of a collective action and notice to a potential class" and "a showing of similarity requires more than unsupported and generalized allegations" (citation omitted)).

     In their reply papers, plaintiffs submit three unsworn declarations and several listings of alleged job postings with defendants in support of its request for conditional certification. However, none of this evidence is sufficient to make even a modest factual showing that there is a class of similarly situated plaintiffs. In a recent decision in this district with facts remarkably similar to this case, the court denied a motion for conditional certification under the FLSA where plaintiff was a loan officer for a financial services company and had submitted a declaration in support of conditional certification and notice that was very similar to those in this case. Armstrong v. Weichert Realtors, 2006 WL 1455781 (D.N.J. May 19, 2006). In Armstrong, plaintiff submitted a declaration that contained "vague and general statements . . but does not define who he is referring to and how he has knowledge of them." Id. at *1. Further, the court noted that "[c]onspiciously absent from the declaration is any specific statement about even one

particular loan officer known to [plaintiff] as having been required to perform unpaid overtime work." Id.  In this case, plaintiffs submit declarations (one from a named plaintiff and two from opt-in plaintiffs) that not only fail to allege their knowledge of specific loan officers who were required to work unpaid overtime, but fail to indicate when, where, by whom, or why such overtime work was required.  While the declarations provide that "all of the loan officers that worked with me at [defendant's location] performed similar, if not the same, job duties that I did," such a broad statement fails to provide any specific information sufficient to justify a finding by the Court that similarly situated plaintiffs exist.

In addition, plaintiffs submit purported "job listings" from each of the defendants that they allege establish the existence of similarly situated plaintiffs.  However, the presentation of these "job listings" is inappropriate because (1) plaintiff has provided no evidence of the job requirements and salaries from any named plaintiffs to compare to those job requirements and salaries in the alleged job listings, see Rodgers, WL 752831, at *5 ("In their declarations, [plaintiffs] do not describe their job requirements and/or job descriptions to allow for an evaluation of similarities"), (2) none of the job listings are authenticated and therefore have little probative value, see Armstrong, 2006 WL 1455781 at *2 ("Plaintiff's additional submissions are meaningless. Plaintiff has submitted unidentified and unauthenticated pages. This Court cannot derive any information from them."), and (3) job postings do not as a matter of law establish the existence of similarly situated plaintiffs, see Rodgers, WL 752831, at *5 ("Plaintiff's reliance on the Defendant's descriptions of the positions on the company website, without more, is not sufficient to allow for a comparison of job requirements.").  In any event, some of the job postings submitted by plaintiffs involve a position titled "field loan originator" and there is no

evidence to suggest that this position is similarly situated to "loan officer" and in fact some of the job descriptions of the job listings submitted by plaintiffs indicate that the positions have different job duties. At oral argument, counsel for defendants further noted that plaintiffs cannot demonstrate the existence of similarly situated plaintiffs amongst all of the defendants because only Champion employs individuals in the position of loan officer.

      Finally, pursuant to the Court's request for supplemental briefing, plaintiffs, while providing no discussion of recent case law to support their pending motion, rely on recent discovery and the filing of newer consents to opt-in to further bolster their contention that other plaintiffs are similarly situated. However, plaintiff's reliance on the opt-in forms as a basis to demonstrate that other plaintiffs are similarly situated is unavailing. The opt-in forms submitted fail to establish the existence of similarly situated plaintiffs for substantially for the same reason that the declarations submitted in plaintiffs' reply papers fail. The opt-in forms submitted provide absolutely no information regarding the individual's job duties, pay provisions or any other aspect of their employment. As such, the Court has no basis to compare these opt-in parties with named plaintiffs to make a rationale determination of whether they are similarly situated. The opt-in forms claim merely that these individuals worked as a loan officer at one of the defendants' locations and that they were improperly excluded under the FLSA and not paid for overtime work. As discussed, such conclusory, bare bones facts are not sufficient to form a factual nexus between named plaintiffs and alleged similarly situated employees.

      Plaintiffs' recent submission also refers to certain documents and deposition testimony of witnesses for the defense. However, consideration of this discovery is not appropriate under the current procedural posture of this motion. This is because the Court has determined, and the

parties initially agreed, that plaintiff's request for court approved notice and conditional certification is properly addressed under the first stage, or notice stage, analysis that has been developed by district courts. Were the court to consider extended deposition testimony or documents produced by defendants during the course of discovery, such consideration may alter the court's analysis and require the Court to consider plaintiffs' request at the second stage under a much stricter standard of proof. See, e.g., Persin v. Career Builders, L.L.C., 2005 U.S. Dist. LEXIS 23095, at *6 (D. Ill. Sept. 21, 2005) (At the stricter second stage, the court should consider "several factors, including: (1) disparate factual and employment settings of the individual plaintiffs; (2) the various defenses available to defendant which appear to be individual to each plaintiff; (3) fairness and procedural considerations; and (4) whether plaintiffs made the required filings." citing Thiessen v. Gen'l Elec. Capital Corp., 267 F.3d 1095, 1103 (10th Cir. 2001)). The parties all recognize that the second stage analysis should be conducted by the Court when substantial information obtained through discovery has been presented for the Court's consideration. Plaintiffs' presentation of evidence in its supplemental submission would undoubtedly qualify for the second stage of analysis. To the extent that plaintiffs wish additional evidence to be considered by the Court, the Court finds that defendants must have the opportunity to rebut such new evidence before the Court applies the second stage analysis.

For all the reasons discussed, plaintiffs' evidentiary submissions fail to provide any support for a determination that similarly situated plaintiffs exist for purposes of conditional class certification and by extension, authority for this Court to facilitate plaintiff's notice to potential class members. This Court recognizes that while several district courts have recently conditionally certified a collective class action pursuant to 216(b) in cases involving "loan

officers," those cases are distinguishable because plaintiffs in those cases presented sufficient evidence, in the form of factually detailed sworn affidavits, to demonstrate that other possible class members, whose titles were "loan officers" or "loan originators," were similarly situated to named plaintiffs.[4] As discussed, plaintiffs have failed to demonstrate sufficient facts to establish the existence of similarly situated plaintiffs. For this reason, plaintiffs' motion for notice to potential class members is denied without prejudice.

II.     *Plaintiffs' motion to toll the statute of limitations*

Plaintiff also seeks an equitable tolling of the statute of limitation under the FLSA. However, equitable tolling of opt-in plaintiffs is moot given this Court's determination that authorization to provide notice is denied based on plaintiff's failure to establish that they are similarly situated to potential class members. If at some later point, such a factual showing is made to the court, and the class is conditionally certified, the Court may return to this particular question.[5]

---

[4] See Gieseke v. First Horizon Home Loan Corp., 408 F. Supp. 2d 1164 (D. Kan. 2006); Scott v. Heartland Home Fiannce, Inc., 2006 WL 1209813 (N.D. Ga. May 3, 2006); Davis v. Novastar Mortgage, Inc., 408 F. Supp. 2d 811 (W.D. Mo. 2005); Geer v. Challenge Fin. Investors Corp., 2005 WL 2648054, at *2-*5 (D. Kan. Oct. 17, 2005); Olivo v. GMAC Mortgage Corp., 374 F. Supp. 2d 545 (E.D. Mich. 2004); Blake v. Colonial Savings, F.A., 2004 WL 1925535 (S.D. Tex. Aug. 16, 2004); Barnett v. Countrywide Credit Indus., Inc., 2002 WL 1023161, at *1-2 (N.D. Tex. May 21, 2002); Casas v. Conseco Fin. Inc., No. 00-1512, Slip Op. at 7-8 (D. Minn. Dec. 4, 2000).

[5] The Court though has serious doubts that any prejudice results in this hypothetical given that potential plaintiffs would lose, under the statute of limitation, only their right to opt-in to the named plaintiffs case, and would not be precluded from filing their own lawsuit.

**III.**     *Defendants' Motion to strike op-in forms*

Defendants spend a large portion of their brief addressing the relative merits and fault associated with plaintiffs' proposed form of notice. As the Court has already found that notice is not necessary, many of these arguments are moot. There remains however, a cross-claim by defendants that plaintiffs have improperly obtained consents to opt-in from additional parties through the improper distribution of notice (mainly by posting information about the lawsuit on a website). Defendants argue that this form of notice is contrary to the Supreme Court's recognition that district courts should control the notice process and it is unfair to defendants that were not given an opportunity to object to any information presented by plaintiffs in their solicitation. The Court begins by noting that on its face, the FLSA is silent regarding the issue whether consents may be filed before the court addresses and authorizes notice. See, e.g., Wertheim v. Arizona, 1993 WL 603552, at *8 (D. Ariz. Sept. 30, 1993) (noting "[t]here is no express statutory requirement that consents may only be filed after the court authorizes notice. Moreover, given that, as a general rule, the statute of limitations runs until a claimant files a consent form, and given that a court later can strike consents if a basis for doing so is established, the court is reluctant to conclude that [S]ection 256(a) *per se* forbids the filing of consents until after the court authorizes notice."); Melendez Cintron v. Hershey P.R., Inc., 363 F. Supp. 2d 10, 17 (D.P.R. 2005) (emphasizing that "there are no specific requirements concerning the time when a notice of consent should be filed under Section 16(b) of the FLSA "); see also Hoffmann-La Roche, Inc. v. Sperling, 493, U.S. 165, 169 (1989) (refusing to disturb the district

court's decision not to strike consents that were filed before the district court's decision to authorize notice).

However, notwithstanding the lack of statutory guidance as to when consents may be filed, several courts have explicitly recognized that striking opt-ins before the court's authorization of notice is an appropriate remedy in circumstances where plaintiffs or their counsel embark in direct solicitation efforts to obtain consents without the input or participation of defense counsel or the court. See Woods v. N. Y. Life Ins. Co., 686 F.2d 578, 580 (7th Cir.1982); Partlow v. Jewish Orphans' Home, Inc., 645 F.2d 757, 759 (9th Cir.1981); Heitmann v. City of Chic., 2004 WL 1718420, at *2 (N.D.Ill. July 30, 2004). Specifically, the Seventh Circuit in Woods noted,

> Before this suit was filed, Woods had sent invitations to other members of the class to join with him, and New York Life does not challenge his right to do this. After suit was filed, however, we do not think it would have been proper for Woods or his counsel to have sent out such invitations without first communicating to the defendant's counsel his intention to do so, so that the defendant's counsel would have an opportunity to verify the accuracy of the notice and, if he wished, to move for an order amending the notice or limiting its distribution in an appropriate manner. We cannot find any express basis in rule or statute for inferring either the duty of the plaintiff's counsel to notify the defendant's counsel in this manner or the power of the district court to regulate the content and distribution of the notice to potential class members; but we think both the duty and the power may fairly be inferred from section [216(b)] itself and from Rule 83 of the Federal Rules of Civil Procedure, which provides that "in all cases not provided for by rule, the district courts may regulate their practice in any manner not inconsistent with" the Federal Rules. Once a section [216(b)] action is commenced, the defendant has a vital interest in, and the court a managerial responsibility regarding, the joinder of additional parties plaintiff, and these concerns support the modest duty and power that we infer.

686 F.2d at 580. Those cases that recognize the remedy of striking opt-ins for improper class solicitation are distinguishable from a circumstance where plaintiff or his counsel was contacted

independently by potential class members.  See Threatt v. Residential CRF, Inc., 2005 WL 2648665 (N.D. Ind. Oct. 17, 2005).  In this case, a website titled www.championmortgageclassaction.com, which contained information about the lawsuit and links to the proposed notice form and opt-in consent forms, was a vehicle of solicitation to potential plaintiffs.  While it appears to the Court that this website is no longer up and running, the use of this page to solicit potential opt-in plaintiffs was clearly in violation of the spirit of Section 216(b) and the Supreme Court's decision in Hoffmann-La Roche.  There is no indication that opt-in plaintiffs became aware of the pending lawsuit except through the efforts of counsel to publicize it.[6]  At the very least, plaintiffs' counsel should have waited to submit consents to opt-in, whether solicited directly or obtained indirectly, following this Court's determination of the motion to conditionally certify the class for purposes of notice.  See Melendez Cintron, 363 F. Supp. 2d at 17 (striking consents to opt-in that were filed with the court without first seeking authorization to notice the alleged class).  But see Wertheim, 1993 WL 603552, at *8 (allowing consents to opt-in that were otherwise not obtained through direct solicitation by plaintiff or his counsel).  The Melendez Cintron decision provides further support for this Court's rejection of

---

[6] Plaintiffs' counsel represented at oral argument that none of the consents to opt-in had been obtained through direct communication by counsel, including through the website.  Instead, counsel claimed that opt-ins had been obtained by "word of mouth."  However, counsel had no explanation for why a majority of the consents to opt-in (at the Court's count nearly 97 of 112 consents) had been obtained during the period prior to January of 2006 in which the website was supposedly still accessible to the public.  In the Court's view, counsel's unfamiliarity with the time line associated with the consents to opt-in and his unsatisfactory explanation for how consents were obtained supports the reasonable inference that such consents were obtained through some form of solicitation, namely through the website.  Regardless, there exists authority for the Court to strike the consents to opt-in that were obtained (even without direct solicitation by plaintiffs' counsel) before plaintiffs obtained certification and notice from the Court. See Melendez Cintron, 363 F. Supp. 2d at 17.

consents to opt-in based on its determination that even if the plaintiff had requested notice authorization, the court would not have granted it because there was no demonstration that potential plaintiffs were similarly situated and "there has to be a nexus established between the complaint and the consent forms based on averred facts." Id. at 18.  This mirrors the circumstances of this case, where the Court finds that the consents filed fail to provide factual support for conditional class certification and court approved notice.

In sum, plaintiffs cannot have their cake and eat it too.  That is, they cannot be heard to complain that they want the court to assist in providing notice, while at the same time engaging in conduct that amounts to an organized method to notify potential plaintiffs of a FLSA claim, without any oversight from the Court or defendants.  See generally Threatt, 2005 WL 2648665, at *2.  The basis for requiring plaintiffs to seek Court authorization of class notice is "to avoid 'stirring up' of litigation through unwarranted solicitation."  Severtson v. Phillips Beverage Co., 137 F.R.D. 264, 266-67 (D. Minn. 1991).  Because the Court has determined that plaintiff has failed to make a factual showing that similarly situated plaintiffs exist, the recognition of opt-in plaintiffs who have been retained through means of notice that this Court has already explicitly rejected cannot be accepted.  The Court finds that it is appropriate to strike all consents to opt-in that have been filed to date.

**CONCLUSION**

It is on this 19th day of June, 2006,

ORDERED that plaintiffs' motions for conditional class certification and equitable tolling of the statute of limitations are DENIED and defendants' motion to strike consents to opt-in is GRANTED.

**s/ William H. Walls**
William H. Walls, U.S.D.J.
